UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES

v.                                                                              7:06-CR-0110
                                                                                (GHL)
ROBERT A. PITTS,

                                        Defendant.

_____

APPEARANCES:                                         OF COUNSEL:

HON. GLENN T. SUDDABY                      JOSE L. NIEVES, ESQ.
Office of the United States Attorney          Special Assistant United States Attorney
Attorney for Respondent
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

OFFICE OF LIONEL HECTOR                   LIONEL HECTOR, ESQ.
Counsel for Defendant
25032 County Route 37
Carthage, New York 13619

GEORGE H. LOWE, United States Magistrate Judge

## **VERDICT**

On September 13, 2006, this matter was tried before the Court.  Both sides were given an

opportunity to submit a post-trial memorandum, and they did so.  Dkt. Nos. 12 and 13.  The

following constitutes the Court's verdict.

## **COUNT I**

Count I of the Information charges the Defendant with a violation of Title 18, United

States Code, Section 641.  Intent is an element of this crime: "The third element the government

must prove beyond a reasonable doubt is that the defendant acted knowingly and willfully with

the intent to deprive the government of the use and benefit of its property." 1 Hon. Leonard

Sand, John S. Siffert, Walter P. Loughlin, & Steven A. Reiss, Modern Federal Jury Instructions –

Criminal § 23A.01, Form Instr. 23A-5 (2005). I have not been persuaded beyond a reasonable

doubt that the Defendant intended to deprive the Government of the use and benefit of the hatch

doors, and therefore I find him not guilty of the charge contained in Count I.

The closest the Government comes to proving the intent element is its argument that the

Defendant "attempt[ed] to push [the first door he removed] over the military vehicle and into the

flat bed of the defendant's pick up truck." Dkt. No. 12 at 3.[1] If, in fact, the Defendant had placed

one or more of the doors in his truck, I would find him guilty of the charge. However, to use the

Government's phraseology, "the door missed the bed of his truck." *Id.* I am not persuaded,

beyond a reasonable doubt, that there was a "miss." If the Defendant truly intended to push this

heavy hatch door from the personnel carrier onto the bed of his truck, he surely would have

positioned his truck closer to the personnel carrier. The proximity of the Defendant's truck to the

personnel carrier, as shown in Exhibits 1 and 2, which was a distance of two to three feet

according to the trial testimony, at a minimum creates a reasonable doubt as to his intent. In

addition, if, according to the Government's theory, the Defendant was trying to push the first door

he had removed onto the flat bed of his truck, why would he have pushed the second door in the

opposite direction, away from his truck, as was testified to by Government witnesses?

In its post-trial memorandum, when addressing Count I, the Government refers to the

Defendant "flagrantly violating Ft. Drum Regulation 420-3, §(6)(p), Page 6." *Id.* Subparagraph

---

[1] The pages of the Government's post-trial memorandum are not numbered but the Court has numbered them for ease of reference.

"p" prohibits "Picking up, disturbing, or taking Government equipment, ordnance, munitions or parts of the same."  I do not understand how this argument advances the Government's cause with respect to Count I.  I will assume *arguendo* that the Defendant did "disturb" Government equipment, but he is not charged in the pending Information with having done so.[2]

In the "Conclusion" to its post-trial memorandum the Government urges the Court not to "reward [the Defendant] for not completing his intended crimes before being apprehended by police" and for not being "afforded an opportunity to complete his crime."  *Id.* at 4-5.  It is **possible** that if the authorities had continued their surveillance longer the Defendant would have committed acts from which it could be inferred, beyond a reasonable doubt, that he intended to deprive the Government of the use and benefit of the doors, and that he therefore would have been guilty of an attempt[3] to violate 18 U.S.C. § 641.  However, this did not occur,[4] and in this

_____

[2] Even if I better understood the Government's position with respect to Regulation 420-3, and felt that it might have some merit, I then would have to grapple with the Government's failure to provide to the Defendant any pretrial notice of the Regulation.

[3] Although I need not resolve the issue, it is unclear whether any defendant could be found guilty of an **attempt** to steal government property under 18 U.S.C. § 641.  On the one hand, the language of Rule 31 of the Federal Rules of Criminal Procedure appears to provide that a defendant could be found guilty of **attempted** theft of government property under 18 U.S.C. 641 (even if the government did not charge him/her with that offense).  *See* Fed. R. Crim. P. 31(c) ("A defendant may be found guilty of . . . an attempt to commit the offense charged"); *see*, *e.g.*, *U.S. v. Choi*, No. 88-Cr-502, 1998 U.S. Dist. LEXIS 17775, at *1 (E.D. La. Nov. 10, 1998) (denying defendant's motion to expunge his criminal conviction for offense of "attempting to steal government property, in violation of 18 U.S.C. § 641").  On the other hand, courts appear to have construed Rule 31 as permitting a defendant to be found guilty of an attempted offense, where the attempt was not charged in the indictment, only if the statute defining the offense charged specifically included an attempt within its proscription.  *See United States v. Dhinsa*, 243 f.3d 637, 675 (2d Cir. 2001) ("Under Fed. R. Crim. P. 31(c), a defendant may be found guilty of an attempt to commit a substantive offense, whether or not the attempt was charged in the indictment, provided an attempt is punishable.") (internal quotation marks and citation omitted); *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980) ("There is no general federal statute proscribing attempt, and it is therefore actionable only where . . . a specific criminal statute makes impermissible its attempted as well as its actual violation."); *United States v. Padilla*, 374 F.2d 782, 787 & n.7 (2d Cir. 1967) ("An attempt to commit a federal crime is punishable only where the section defining the crime specifically includes an attempt within its proscription.") (citations omitted).  Here, I note that the statute defining the

country a person cannot be convicted on a possibility.[5]

## COUNT II

Count II of the Information charges as follows:

> On or about March 20, 2006 in the Northern District of New York,
> within the special maritime and territorial jurisdiction of the United
> State, that is, Fort Drum, the Defendant did enter, and was found
> within, a United States military reservation, Fort Drum, New York,
> for a purpose prohibited by law or lawful regulation. All in
> violation of Title 18, United States Code, Section 1382.

Dkt No. 1.[6]

Initially, the Court notes that the "was found within" language of Count II is not

applicable in this case because it applies, according to § 1382, only to one who "is found within

any such . . . fort . . . after having been removed therefrom or ordered not to reenter . . . ." No

---

offense charged does not specifically include an attempt within its proscription. *See* 18 U.S.C. § 641
(extending proscription to "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the
use of another" government property, or "[w]hoever receives, conceals, or retains the same with intent to
convert it to his use or gain," but not extending proscription to whoever "attempts" to do so).

[4] If the authorities indeed had continued their surveillance, and eventually observed the
Defendant placing one or more of the doors in his truck, there was no realistic danger that he then could
have escaped.

[5] In his opening statement the prosecutor described the Defendant as a "scavenger." As part of
its cross-examination of Defendant the Government attempted to question him about prior involvement
with law enforcement. If indeed there was evidence that on prior occasions the Defendant was a
"scavenger," and in some fashion misappropriated property, this probably would have been relevant with
respect to the critical issue of intent, and it might have been admissible pursuant to Rule 404(b) of the
Federal Rules of Evidence. However, the Defendant had not been given prior notice of such evidence, as
was required by the Criminal Pretrial Order (Dkt. No. 7, II.C.2), and therefore I sustained the Defendant's
objection to the line of questioning.

[6] It is somewhat regrettable that the Defendant did not request a bill of particulars that would
identify with specificity what "law or lawful regulation" was being referred to in Count II. The analysis
of the evidence then could have been more focused. However, the Court's verdict on Count II would be
the same whether the reference was to Title 18, United States Code, Section 641, or Fort Drum
Regulation 420-3 (which were the only law and regulation referred to at the trial).

evidence was offered that the Defendant had been removed from Fort Drum or ordered not to reenter it.  Thus the only issue before the Court is whether the Defendant "did enter" Fort Drum on March 20, 2006 "for a purpose prohibited by law or lawful regulation."

The Court finds that there is little evidence, if any, to support this charge.  I easily conclude that the Defendant's guilt has not been proven beyond a reasonable doubt, and therefore I find him not guilty of the charge contained in Count II.

It is undisputed that the Defendant possessed a Firewood Permit, valid for the period March 18-25, 2006, authorizing him to enter Fort Drum "to gather firewood."  Government Ex. 16.  In addition, the Government offered no evidence to contradict the Defendant's testimony, which I find credible in this regard, that on March 20, 2006, he entered Fort Drum, cut firewood, removed some of it, and was in the process of returning to recover the remainder of the cut firewood when the incidents concerning the personnel carrier hatch doors occurred.  This testimony was implicitly corroborated by Government witness Kraeger, who testified that on March 20, 2006, at about 5:00 p.m., he observed cut firewood at the side of the road.

Under these circumstances I find at the very minimum that there is a reasonable doubt as to whether on March 20, 2006, the Defendant "did enter" Fort Drum for an unlawful purpose.

### COUNT III

Count III of the Information charges the Defendant with possession of burglar's tools, in violation of New York State Penal Law Section 140.35, as assimilated pursuant to Title 18, United States Code, Sections 7 and 13.  The tools at issue are a wrench, screwdriver, and certain others that the Defendant utilized in separating the hatch doors from the personnel carrier.

Section 140.35 of the Penal Law provides:

> A person is guilty of possession of burglar's tools when he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, or offenses involving larceny by a physical taking, or offenses involving theft of services as defined in subdivisions four, five and six of section 165.15, **<u>under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character.</u>**

N.Y. Penal Law § 140.35 (McKinney 2006) (emphasis added).

Here, since I previously found that the Government failed to prove beyond a reasonable doubt the intent element of a Section 641 violation, it follows that the intent element of Section 140.35 has not been established beyond a reasonable doubt.  I therefore find the Defendant not guilty of Count III.[7]

Dated: November 2, 2006
       Syracuse, New York

_George H. Lowe_
George H. Lowe
United States Magistrate Judge

---

[7] This same analysis might apply to Count II, but theoretically a defendant could have the requisite criminal intent at the time of entering a fort but then change his mind.

6